IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ZU PING CHEN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 3:25-cv-00970-BL |
| ) | |
| MELLISSA B. HARPER, *Field* ) | |
| *Office Director of New Orleans Field* ) | |
| *Office*, TODD LYONS, *in his* ) | |
| *official capacity as Acting Director* ) | |
| *of Immigration and Customs* ) | |
| *Enforcement*, KRISTI NOEM, ) | |
| *Secretary of Homeland Security*, and ) | |
| PAMELA BONDI, *U.S. Attorney* ) | |
| *General*, ) | |
| ) | |
| Respondents. ) | |

# **ORDER**

This matter is before the court on the Petitioner's Motion for a Preliminary Injunction (Doc. 5) against Respondents Mellissa Harper, New Orleans Field Office Director for Immigration and Customs Enforcement ("ICE"), Todd Lyons, in his official capacity as Acting Director of ICE, Kristi Noem, Secretary of the Department of Homeland Security, and Pamela Bondi, United States Attorney General (collectively, "Respondents"). Having reviewed the Petitioner's motion and the record in this action, the court finds that the Petitioner's Motion for a Preliminary Injunction (Doc. 5) is due to be **DENIED**.

1

I.     **Procedural History**

On December 9, 2025, the Petitioner filed a document entitled Petition for Writ of Habeas Corpus and Complaint for Declarative and Injunctive Relief ("the petition"). (Doc. 1). The petition alleges that the Respondents' threatened revocation of the Petitioner's Order of Supervision ("OSUP"), or actions toward revocation of his OSUP, violate the Petitioner's due process rights, the Administrative Procedure Act ("APA"), and the *Accardi* doctrine, and constitutes ultra vires action. (*See* Doc. 1).

According to the petition, the Petitioner is a 42-year-old Chinese national who entered the United States without a passport through the Port of Savannah, Georgia, in August of 1999. He was apprehended upon entering the country. (*See* Doc. 1 at ¶¶ 23, 24). The Petitioner applied for relief from removal, asylum, withholding of removal, and protection under the Convention Against Torture. All applications for relief were denied by an Immigration Judge on April 25, 2000, and the Petitioner was ordered removed to China. (*See* Doc. 1 at ¶ 24). The petition alleges that, in October 2024, the Petitioner received a routine check-in notice from ICE, and that he appeared at the check-in as required. (*See* Doc. 1 at ¶ 25). The petition further alleges that, at that October 2024 check-in, ICE detained the Petitioner without notice and started his transfer to the Jena, Louisiana, detention center. (Doc. 1 at ¶ 25). After being involved in an automobile accident during transport and sustaining

a broken collarbone, the Petitioner requested a stay of removal; "ICE released him from custody on October 30, 2024, under an [OSUP], with a next reporting date of December 16, 2025, in Montgomery, Alabama." (*See* Doc 1 at ¶¶ 25, 26).

On December 11, 2025, the Petitioner filed in this court a document entitled Petitioner's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. 5). On December 15, 2025, the court entered an order denying the Petitioner's motion for an ex parte temporary restraining order and set the case for a hearing on the Petitioner's motion for a preliminary injunction. (Doc. 9). On December 17, 2025, counsel for the Petitioner filed a supplemental brief (Doc. 16) alleging that, at the Petitioner's check-in on December 16, 2025, "ICE unlawfully revoked [his OSUP] without justification and subjected him to re-detention by imposing an ankle monitor and mandatory participation in the ISAP program."[1] (Doc. 16). A hearing on the Petitioner's motion for a preliminary injunction was held on December 22, 2025. Following the December 22, 2025, hearing, counsel for the Petitioner and counsel for the Respondents filed supplemental briefs.

In his motion for a preliminary injunction (Doc. 5), the Petitioner requests, in part, that the court grant the following relief:

> 1. A Preliminary and Permanent Injunction ordering Respondents to comply with the law, specifically by: (a) Enjoining Respondents from altering or revoking Petitioner's Order of Supervision (OSUP) without first complying with all the mandatory procedural requirements of 8

---

[1] Neither the petition nor the motion for a preliminary injunction include this information.

3

C.F.R. §§ 241.4, 241.13, and the Due Process Clause of the Fifth Amendment. (b) Mandating that any future attempt to deprive Petitioner of his liberty be preceded by (i) advance, individualized written notice of the factual and legal grounds for the action, and (ii) a pre-deprivation hearing before a neutral decision-maker as specified in these regulations.

2. Enjoin Respondents from transferring Petitioner outside of this judicial district while this action is pending.

(Doc. 5 at 8–9).

## II.   Legal Standard

The decision whether to grant a preliminary injunction is within the sound discretion of the district court. *See Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). The court may grant a preliminary injunction only if the Petitioner demonstrates each of the following prerequisites: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The third and fourth factors 'merge when, as here, the government is the opposing party.'" *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020) (quoting *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020)). "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites."

*GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (*per curiam*)).

## DISCUSSION

I.  **Substantial Likelihood of Success on the Merits**

   A.  **Due Process Violations**

The Petitioner argues that the "Respondents cannot legally violate the Due Process Clause of the Fifth Amendment by revoking the Petitioner's OSUP without providing timely, written notice, or an opportunity to be heard before a neutral decisionmaker prior to revocation." (Doc. 5-1). However, the court find that the Petitioner has not established that he will succeed on the merits of this claim.

An OSUP can be revoked for several reasons, including when an alien violates his conditions of release. *See* 8 C.F.R. § 241.4(l)(1). Pursuant to § 241.4(l)(1), "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her parole" and "will be afforded an initial informal interview promptly *after* his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." (Emphasis added). An OSUP may also be revoked "in the exercise of discretion" of the Executive Associate Commissioner or the district director

> when, in the opinion of the revoking official: (i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of

5

>  release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstances, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2). Notably, from the plain language of the regulation, there appears to be no notice or informal interview requirement in § 241.4(l)(2).

Similarly, 8 C.F.R. § 241.13(i)(1)-(2) states that an OSUP can be revoked due to violation of conditions of release and "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Further, "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her release," and the "Service will conduct an initial informal interview promptly *after* his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *See* 8 C.F.R. § 241.13(i)(3).

A plain reading of the applicable regulations makes clear that, when notice and an informal interview are required, such notice shall be given to the alien "upon revocation," and an informal interview will be conducted "after" his or her return to custody. Contrary to the Petitioner's allegations, the regulations do not require that notice or an opportunity to be heard be provided "prior to revocation."

Moreover, the Petitioner's Due Process claim is not likely to succeed on the merits because he has not demonstrated that his OSUP has been revoked. At the hearing on the Petitioner's Motion for a Preliminary Injunction held on December

6

22, 2025, the Petitioner and the attorney who accompanied him to his December 16, 2025, ICE check-in both testified that, although the Petitioner was initially informed that his OSUP was being revoked, ICE later indicated that the Petitioner's OSUP had not been revoked and allowed the Petitioner to leave with instructions to report for a check-in on December 19, 2025.  The Petitioner was then instructed to report for another check-in on December 30, 2025, and every eight weeks thereafter.  At the hearing, the court admitted into evidence documents that were given to the Petitioner at his December 16, 2025, check-in.  Although the documents are mostly written in Chinese for the Petitioner's convenience, nothing in the documents, nor the testimony from the Petitioner and his attorney who accompanied him at his December 16, 2025, check-in, indicate that his OSUP was revoked.  Rather, the documents provided to the Petitioner at the check-in pertain to his December 30, 2025, appointment, the Intensive Supervision Appearance Program, and the GPS monitoring.[2]  No documents were provided to the court that indicate that the Petitioner was issued a new OSUP or an amended OSUP.

Although the Petitioner argues that the imposition of an ankle-monitor and enrollment in the Intensive Supervision Appearance Program constitutes a "de-facto

---

[2] The Respondents, in their supplemental response to the order to show cause (Doc. 20), provided the court with a google translation of the documents admitted into evidence at the December 22, 2025, hearing.  The court relies on the Respondents' translation of those documents and the Petitioner has not challenged the Respondents' translation.

7

revocation of Petitioner's OSUP" (Doc. 23), the Petitioner has failed to provide the court with any law or legal analysis to support that argument. *See Mahmoud v. Cangemi,* 2006 WL 1174214, at * 2 (D. Minn. May 1, 2006) (denying habeas relief where petitioner argued that the conditions of an ICE order of supervision violated due process by imposing a state of constructive detention pending removal). The court finds instead that the Petitioner's OSUP was merely amended by the imposition of an ankle monitor and mandatory participation in the ISAP program.[3] The court has not found authority prohibiting ICE from imposing additional conditions for the Petitioner's continued release on an OSUP that fall within the scope of 8 C.F.R. § 241.5(a)(1), nor has it found authority that imposing additional conditions constitutes a revocation of an OSUP. The Petitioner has pointed to no authority prohibiting ICE from modifying the conditions of his release without revocation, and the Petitioner's December 2024 OSUP does not limit ICE to modifications of the OSUP only upon a change of circumstances. Although 8 C.F.R. § 241.13 does require a showing of a change in circumstances in order to *revoke* an OSUP, the court does not find any authority requiring a change in circumstances to justify a *modification* of the conditions of an OSUP. Thus, the Petitioner has not established that he will succeed on the merits of this claim.

---

[3] The court makes this finding despite the Respondents' contention to the contrary.

**B.     Administrative Procedure Act Violations**

The Petitioner argues that "the imminent revocation of Petitioner's release is arbitrary and capricious, violating the APA." (Doc. 5-1). Further, his counsel asserts that, in "all the cases known to [her], [ICE] failed to follow the prescribed process and detained noncitizens without process." (Doc. 5-1). However, as stated above, the Petitioner has not demonstrated that his OSUP has been revoked. Therefore, the court cannot consider whether ICE has followed the prescribed revocation procedures in either § 241.4 or § 241.13. Moreover, the court finds insufficient evidence in the record upon which to conclude that an unlawful revocation that would constitute a violation of the APA is imminent in this case. Thus, the Petitioner has not established that he will succeed on the merits of this claim.

**C.     Ultra Vires Agency Action**

The Petitioner argues that the "imminent revocation of Petitioner's . . . OSUP is not authorized by statute nor regulations." (Doc. 5-1). However, because the Petitioner has not demonstrated that his OSUP has been revoked, the court cannot consider whether an ultra vires agency action has occurred. Moreover, the court finds insufficient evidence in the record upon which to conclude that an unlawful revocation that would constitute an ultra vires action is imminent in this case. Thus, the Petitioner has not established that he will succeed on the merits of this claim.

### D.   *Accardi* Doctrine Violation

The Petitioner argues that the "imminent revocation of Petitioner's [OSUP] and the imminent detention he is facing—failing to provide written reasons and advise noncitizens in advance of the revocation, absent any change[d] circumstances, and to provide a prompt hearing prior to revocation—require[es] that action be set aside or at least be injuncted while the merits of the case are reviewed." (Doc. 5-1). However, the Petitioner has provided the court with no legal analysis as to how his "imminent" revocation violates the *Accardi* doctrine. Instead, he relies on his counsel's knowledge of ICE "violat[ing] its own regulations and policies and detain[ing] noncitizens when they came to report while complying with the OSUPs." (Doc. 5-1). Again, the Petitioner has failed to demonstrate that his OSUP has been revoked, or that it will be revoked unlawfully. He has misplaced his reliance on advance notice and a hearing being prerequisites to a lawful revocation, which is not the case. Thus, the Petitioner has not established that he will succeed on the merits of this claim.

## II.   Remaining Factors

Based on the foregoing, the court finds that the Petitioner has not demonstrated a substantial likelihood of success on the merits of his claims. Thus, the court need not consider the remaining factors. "Controlling precedent is clear that injunctive relief may not be granted unless the [petitioner] establishes the

substantial likelihood of success criterion." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005).

Nevertheless, the court notes that the Petitioner's motion for a preliminary injunction would likely fail to satisfy the remaining elements. There are no specific signs indicating that an unlawful revocation of the Petitioner's OSUP is imminent, and no evidence that the Respondents have committed any unlawful acts thus far. Therefore, the only relief the court could offer the Petitioner would be an order generally directing the Respondents to comply with the law. However, such an order would be akin to a "follow-the-law injunction," and "[i]t is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006).

Finally, to the extent that the Petitioner requests that the court enjoin the Respondents from transferring him outside of this judicial district while this action is pending, the court cannot grant such relief. Title 8 U.S.C. § 1252(a)(2)(B) states, in pertinent part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> . . .

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Further, 8 U.S.C. § 1231(g)(1) states that the "Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." As a fellow court in our circuit explained, "[c]ourts have interpreted these statutes to mean that a district court lacks jurisdiction to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General." *Guerra-Castro v. Parra*, 2025 WL 1984300, at *2 (S.D. Fla. July 17, 2025). The determination of where to detain an alien is within the discretion of the Attorney General and, as such, this court lacks the authority to enjoin the Respondents from transferring the Petitioner outside of this judicial district.

Accordingly, it is

**ORDERED** and **ADJUDGED** that the Petitioner's Motion for a Preliminary Injunction is **DENIED**.

**DONE** and **ORDERED** on this the 21st day of January, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE