IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ZU PING CHEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-CV-00970-BL-JTA |
| | ) | |
| CHRISTOPHER BULLOCK, *Field* | ) | |
| *Office Director of New Orleans Field* | ) | |
| *Office*, TODD LYONS, *in his* | ) | |
| *official capacity as Acting Director* | ) | |
| *of Immigration and Customs* | ) | |
| *Enforcement*, KRISTI NOEM, | ) | |
| *Secretary of Homeland Security*, and | ) | |
| PAMELA BONDI, *U.S. Attorney* | ) | |
| *General*, | ) | |
| | ) | |
| Respondents. | ) | |

## **ORDER**

On February 24, 2026, in Case No. 2:26-cv-00125-ECM-JTA, Petitioner Zu Ping Chen ("Petitioner") filed a verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 arising out of the revocation of a long-standing Order of Suspension ("OSUP") by Immigration and Customs Enforcement ("ICE"). (*See generally Chen v. Bullock et al.*, 2:26-cv-00125-ECM-JTA (M.D. Ala.) ("*Chen II*")). On February 25, 2026, United States Middle District Judge Emily Marks, to whom *Chen II* was assigned, issued an order denying the Petitioner's motion for a temporary restraining order ("TRO") because "he failed to comply with [FED. R.

1

CIV. P.] 65(b)(1)'s certification requirement." (*Chen II,* Doc. 4 at 2). On that same day, Judge Marks conducted a status conference, at which counsel for the Petitioner "acknowledged that she could have filed an amended petition in [this case] instead of filing th[e] new action." (*Chen II*, Doc. 6 at 1). Further, counsel for the Respondents notified the court that the Petitioner filed another lawsuit in the Northern District of Alabama, Case No. 7:26-cv-00320-LCB-NAB. Counsel for the Petitioner "acknowledged that she cannot maintain all three actions at the same time." (*Chen II*, Doc. 6 at 1). Judge Marks directed the Clerk of the Court to docket the verified petition and complaint for declaratory and injunctive relief filed in *Chen II* as an amended petition in this case. *(See Chen II*, Doc. 6 at 2).

On March 5, 2026, this court issued an order noting that the Amended Petition (doc. 28) re-docketed in this case is now the operative pleading and denying the Petitioner's request for an *ex parte* TRO because that relief had already been denied by Judge Marks, and the Respondents had already been afforded notice of the emergency motion for TRO. (*See* Doc. 33). On March 18, 2026, the court conducted a hearing on the Petitioner's motion for a preliminary injunction and the merits of his petition. *See* FED. R. CIV. P. 65(a)(2). At the hearing, the court ordered the parties to file supplemental briefs no later than March 20, 2026; both the Petitioner and the Respondents filed their respective briefs on March 20, 2026. (*See* Docs. 44,

45). As such, the court now has been fully briefed on the merits of the Petitioner's habeas petition and the Petitioner's motion for preliminary injunction.

Having reviewed the record in this action, it plainly appears from the amended habeas petition that the Petitioner is not entitled to relief and, as such, the court **DENIES** the Petitioner's amended habeas petition (doc. 28) and **DENIES AS MOOT** the Petitioner's motion for a preliminary injunction (doc. 29).

## I.    Procedural History

### A. The Petitioner's Initial Habeas Petition

On December 9, 2025, the Petitioner filed his initial Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1). On December 11, 2025, the Petitioner filed his first emergency motion for an *ex parte* TRO and/or preliminary injunction. (Doc. 5). The court subsequently denied the Petitioner's first request for an *ex parte* TRO on December 15, 2025, (doc. 9) and, after supplemental briefing and a hearing, the court ultimately denied the Petitioner's first motion for a preliminary injunction on January 21, 2026. (Doc. 26). On February 23, 2026, the court issued an order for the Petitioner to show cause on or before March 2, 2026, why the initial petition should not be dismissed. (Doc. 27). On February 24, 2026, counsel for the Petitioner notified the court and the Respondents via email that the Petitioner had been re-detained at his ICE check-in and that she would be filing "an emergency TRO to prevent [the Petitioner from being] moved further and also for

3

immediate release."  As stated above, instead of filing an amended petition and corresponding emergency TRO in this case, the Petitioner filed a separate action in *Chen II*; that petition has now been docketed in this case as the operative pleading. (Doc. 28).

### B. The Petitioner's Amended Habeas Petition

On February 25, 2026, the Petitioner filed a verified Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 arising out of the revocation of a long-standing OSUP by ICE.  (Doc. 28).  The amended petition alleges that the Respondents' actions in revoking the Petitioner's OSUP and taking him into custody "violate the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the *Accardi* doctrine."  (Doc. 28 at 2).

According to the petition, the Petitioner is a 42-year-old Chinese national who entered the United States without a passport through the Port of Savannah, Georgia, in August of 1999.  He was apprehended upon entering the country.  (Doc. 28 ¶¶ 26, 27).  The Petitioner applied for relief from removal, including asylum, withholding of removal, and protection under the Convention Against Torture.  (Doc. 28 ¶ 27). All applications for relief were denied by an Immigration Judge on April 25, 2000, and the Petitioner was ordered removed to China.  (Doc. 28 ¶ 27).  The petition further alleges that, during an October 2024 check-in, ICE detained the Petitioner

4

without notice and started his transfer to a detention facility in Louisiana. (Doc. 28 ¶ 29). Following an automobile accident during transport which caused the Petitioner to sustain a broken collarbone, "ICE released [the] Petitioner from custody on October 30, 2024, under a renewed OSUP which remained in effect through December 16, 2025." (Doc 28 ¶ 30). "On that date, [the] Petitioner went to report in Montgomery, Alabama and was detained, but filed [this action]." (Doc 28 ¶ 30).

According to the petition, "[o]n February 24, 2026, [the] Petitioner, in full compliance with his conditions of release, appeared for his scheduled check-in at the ICE office in Montgomery, Alabama, accompanied by his attorney, Brian J. Bogdany." (Doc 28 ¶ 33). The Petitioner alleges that an ICE officer informed the Petitioner and attorney Bogdany that the Petitioner's "OSUP was being revoked and he was being taken into immediate custody." (Doc 28 ¶ 33). The Petitioner was provided with a "Notice of Revocation of Release" that was signed by Field Office Director Christopher Bullock asserting that the Petitioner's revocation is proper pursuant to 8 C.F.R. § 241.4(l). (Doc 28 ¶ 34). The Notice of Revocation provided that the Petitioner's conduct, or other circumstance, indicates that release is no longer appropriate and, specifically, that "[t]his is a determination that revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director of ERO." (Doc. 44-1). The Petitioner alleges that "[a]t no point prior to being taken into custody was [the] Petitioner provided with

5

advance written notice of the reasons for the revocation or a meaningful opportunity to be heard by a neutral decision-maker." (Doc 28 ¶ 36). Further, the Petitioner alleges that "ICE officials informed [the] Petitioner's counsel that [the Petitioner] would be transferred to a separate detention facility in Montgomery, and that any 'review opportunity' would be provided only after his transfer and would take place at an undetermined future date in Louisiana" which "denies the 'prompt' informal interview required by regulation." (Doc 28 ¶ 36).

## II.    Regulatory Framework

The Petitioner asserts that, "for a noncitizen like [the] Petitioner whose removal has long been deemed not reasonably foreseeable, the controlling regulation is 8 C.F.R. § 241.13." (Doc. 28 ¶ 123).

An OSUP can be revoked for several reasons, including when an alien violates his conditions of release. *See* 8 C.F.R. § 241.4(l)(1). Pursuant to § 241.4(l)(1), "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her parole" and "will be afforded an initial informal interview promptly *after* his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." (Emphasis added). An OSUP may also be revoked "in the exercise of discretion" of the Executive Associate Commissioner or the district director

> when, in the opinion of the revoking official: (i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of

6

release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstances, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).  Notably, from the plain language of the regulation, there appears to be no notice or informal interview requirement in § 241.4(l)(2).

Similarly, 8 C.F.R. § 241.13(i)(1)-(2) states that an OSUP can be revoked due to a violation of conditions of release and "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  Further, "*[u]pon revocation*, the alien will be notified of the reasons for revocation of his or her release," and the "Service will conduct an initial informal interview promptly *after* his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  *See* 8 C.F.R. § 241.13(i)(3) (emphasis added).

In the context of revoking an OSUP pursuant to 8 C.F.R. § 241.4(l)(2), the definitions found at 8 C.F.R. § 1.2 state that the term "[d]irector or district director … [o]n of after March 1, 2023, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, mean[s], to the extent that authority has been delegated to such official … [a] field office director."  Further,

[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws are vested in the Secretary of Homeland Security. The Secretary of Homeland Security may, in the Secretary's discretion, delegate any such authority or function to any official, officer, or employee of the Department of

Homeland Security, including delegation through successive redelegation, or to any employee of the United States to the extent authorized by law. Such delegation may be made by regulation, directive, memorandum, or other means as deemed appropriate by the Secretary in the exercise of the Secretary's discretion. A delegation of authority or function may in the Secretary's discretion be published in the Federal Register, but such publication is not required.

8 C.F.R. § 2.1.

The Respondents have provided the court with a 2003 Memorandum Delegating Authority in which they contend that "ICE delegated th[e] authority to revoke OSUPs pursuant to 8 C.F.R. § 241.4 to Field Office Directors and other local authorities." (Doc. 44 at 2). On June 6, 2003, the Assistant Secretary of the Bureau of Immigration and Customs Enforcement issued what is titled a "Delegation of Authority to the Directors, Detention and Removal and Investigations, and to Field Office Directors, Special Agents in Charge and Certain Other Officers of the Bureau of Immigration and Customs Enforcement." (Doc. 44-2). The Delegation of Authority provides the following:

2. Delegations

Pursuant to the authority vested in the Secretary of Homeland Security by law, including the Homeland Security Act of 2002, as amended (HSA), and delegated to the Assistant Secretary for ICE in *Department of Homeland Security Delegation No.7030*, I hereby delegate the following authorities to the following officials, including those in an acting capacity:

(A) Delegation to the Detention and Removal Program:

….

8

> (2) Authorities of Director, Detention and Removal; Deputy Assistant Director, Field Operations Division; Field Office Directors; Deputy Field Office Directors; and Officers in Charge:
>
> > ….
>
> > (n) Authority under INA § 241, 8 U.S.C. § 1231 and 8 C.F.R. Part 241, relating to detention and removal of aliens, warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention[.]

(Doc. 44-2) (Delegation Number: 0001 from the Assistant Secretary of the Bureau of Immigration and Customs Enforcement (June 6, 2003) (emphasis in original).

Thus, pursuant to Delegation Number: 0001, the Assistant Secretary of the Bureau of Immigration and Customs Enforcement delegated authority to field office directors relating to detention and removal of aliens pursuant to 8 C.F.R. § 241.

## DISCUSSION

The Petitioner alleges eight causes of action and asserts that his petition should be granted and that his immediate and unconditional release from custody should be ordered.  (*See* Doc. 28).  The court addresses the Petitioner's arguments out of turn.

## I.    Count Five: Statutory and Regulatory Violations

The Petitioner asserts that the revocation of his OSUP and his subsequent detention violate the plain text and structure of the INA and its implementing regulations.  (Doc. 28 ¶ 121).  The Petitioner contends that, although the Notice of Revocation cites 8 C.F.R. § 241.4(l) as authority, the "Respondents failed to comply with that regulation's own requirements."  (Doc. 28 ¶ 122).  Here, undisputed by the Petitioner, the Notice of Removal states that the Petitioner's "conduct, or other circumstances, indicates that release is no longer appropriate" and that "revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director of ERO."  (Doc. 44-1).  The Petitioner further contends that the "Respondents' boilerplate assertion that circumstances did not permit referral is pretextual" and that the Respondents were afforded "ample time to follow their own command structure."  (Doc. 28 ¶ 122).  However, as stated above, revocation of an OSUP pursuant to 8 C.F.R. § 241.4(l)(2) is discretionary and, as is the case here, the field office director could revoke the Petitioner's release when, in the field office director's opinion, "the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  8 C.F.R. § 241.4(l)(2)(iv).  Such authority to revoke an alien's OSUP was delegated to field office directors pursuant to the June 2003 delegation from the Assistant Secretary of the Bureau of Immigration and Customs Enforcement.  Further, "under 241.4(l)(2),

10

the officials with the power to revoke release after making certain findings include filed office directors and any other official 'delegated the function or authority … for a particular geographic district, region, or area.'" *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025).

The Petitioner also contends that the "stated grounds for revocation-that the 'purpose of release have been served' and it is 'appropriate to enforce the removal order'-are arbitrary and meaningless without a factual basis showing that removal is now actually possible." (Doc. 28 ¶ 122). However, these boxes are not checked on the Notice of Removal and, as such, do not seem to have been relied upon by ICE when revoking the Petitioner's OSUP.

The Petitioner contends that the Respondents also "violated the procedural mandates … by failing to provide a 'prompt' informal interview." (Doc. 28 ¶ 124). However, as stated above, from the plain language of the regulation, there appears to be no notice or informal interview requirement in 8 C.F.R. § 241.4(l)(2). Moreover, even if the court were to find that the Petitioner's revocation was not governed by 8 C.F.R. § 241.4(l)(2), it appears from the record that the Notice of Revocation included a "Notice of Informal Interview," which was scheduled for February 24, 2026—the day the Petitioner's OSUP was revoked. In fact, documentation provided by the Respondents further indicates that the Petitioner was afforded an informal interview on February 24, 2026, in which Officer Charles

11

Anderson "afford[ed] the [Petitioner] an opportunity to respond to the reasons for revocation of his … order of supervision stated in the notification letter." (Doc. 44-1 at 3-4).  This documentation indicates that the Petitioner informed the officer of his medical problems and indicates that the Petitioner wrote his own statement responding to the reasons for revocation of his OSUP.  (*See* Doc. 44-1 at 3-4). Therefore, the court disagrees with the Petitioner's argument that the Respondents violated their regulations by failing to provide a prompt informal interview.  As the Respondents assert, since the Petitioner's revocation was governed by 8 U.S.C. § 241.4(l)(2), "ICE provided [the Petitioner] with more due process than he was entitled to by law."  (Doc. 44 at 4).

Finally, to the extent that the Petitioner asserts that, "for a noncitizen like [the] Petitioner whose removal has long been deemed not reasonably foreseeable, the controlling regulation is 8 C.F.R. § 241.13" (doc. 28 ¶ 123), the court disagrees.  As stated above, an OSUP may be revoked pursuant to 8 C.F.R. §§ 241.4(l) or 241.13(i). Here, the Notice of Revocation provided to the Petitioner upon revocation indicates that his OSUP was being revoked pursuant to 8 C.F.R. § 241.4(l).  As such, the court declines to address this argument.

Accordingly, Count Five fails as a matter of law, and the court **DENIES** Count Five's request for habeas relief.

## II.    Count Six: Violation of the *Accardi* Doctrine

The Petitioner asserts that the "Respondents violated mandatory procedures set forth in 8 C.F.R. §§ 241.4 and 241.13 regarding the grounds for revocation, the authority of the revoking official, the requirement for specific findings, and the provision of a prompt, meaningful interview."  (Doc. 28 ¶ 127).  Further, the Petitioner contends that "[b]ecause the Respondents' actions to revoke Petitioner's OSUP and re-detain him were takin in clear violation of binding agency regulations and internal procedures, the revocation is invalid under the *Accardi* doctrine and must be set aside."  (Doc. 28 ¶ 129).  The court finds this argument unavailing.

"The *Accardi* doctrine—derived from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)—'stands for the unremarkable proposition that an agency must abide by its own regulations.'" *Lageyre-Ravelo v. Lyons*, No. 2:25-cv-1171-KCD-DNF, 2026 WL 575183, at *3 (M.D. Fla. Mar. 2, 2026) (citing *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979)).  Further, "'agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court.'" *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984) (citing *Haitian Refugee Center v. Smith [HRC]*, 676 F.2d 1023, 1041 n. 48 (5th Cir. Unit B 1982)).

As stated above, the Respondents followed the mandatory procedures set forth in Section 241.4(l)(2) regarding the grounds for revocation and the proper authority

13

to revoke the Petitioner's OSUP was delegated to Field Office Director Bullock. (*See* Doc. 44-2). Further, under the plain reading of Section 241.4(l)(2), there is no requirement for the revoking official to make specific findings regarding revocation of the Petitioner's OSUP and is devoid of any requirement that the revoking official give a reasoned explanation as to why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner. Moreover, although not required by Section 241.4(l)(2), the Respondents did give the Petitioner a prompt informal interview upon revocation of his OSUP. The interview given to the Petitioner was performed by SDDO Anderson on the same day the Petitioner's OSUP was revoked and after giving him formal notice of the same. (*See* Doc. 44-1 at 3-4).

Accordingly, Count Six fails as a matter of law, and the court **DENIES** Count Six's request for habeas relief.

### III. Count Two: Violation of the Fifth Amendment of the U.S. Constitution (Procedural Due Process)

The Petitioner relies on the Supreme Court's opinion in *Matthews v. Eldridge* for its three-part test to determine whether a civil detention violates a detainee's due process rights. The *Matthews* court considered three distinct factors to determine whether due process complies with the U.S. Constitution: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable

14

value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).  As such, the Petitioner argues that "revoking [the] Petitioner's order of supervision … without prior notice, findings, or an opportunity to be heard, without any meaningful process before or promptly after his re-detention constitutes a clear violation of his rights under the Fifth Amendment to the U.S. Constitution."  (Doc. 28 ¶ 94).  However, the court finds that the Petitioner received exactly what the Fifth Amendment requires—fair notice and a meaningful opportunity to be heard.  *See Matthews*, 424 U.S. at 333.

As stated above, from the plain language of the regulation, there appears to be no notice or informal interview requirement in 8 C.F.R. § 241.4(l)(2).  However, even if the court were to find that the Petitioner's revocation was not governed by 8 C.F.R. § 241.4(l)(2), it appears from the record that the Notice of Revocation included a "Notice of Informal Interview," which was scheduled for February 24, 2026—the day the Petitioner's OSUP was revoked.  In fact, documentation provided by the Respondents further indicates that the Petitioner was afforded an informal interview on February 24, 2026, in which Officer Charles Anderson "afford[ed] the [Petitioner] an opportunity to respond to the reasons for revocation of his … order of supervision stated in the notification letter."  (Doc. 44-1 at 3-4).  This

15

documentation indicates that the Petitioner informed the officer of his medical problems and indicates that the Petitioner wrote his own statement responding to the reasons for revocation of his OSUP.  (*See* Doc. 44-1 at 3-4).  As such, the court agrees with the Respondents that "ICE provided [the Petitioner] with more due process than he was entitled to by law."  (Doc. 44 at 4).

Accordingly, Count Two fails as a matter of law, and the court **DENIES** Count Two's request for habeas relief.

## IV.    Count One: Violation of the Fifth Amendment of the U.S. Constitution (Substantive Due Process)

The Petitioner argues that his "detention is … untethered from any legitimate regulatory purpose" and is "punitive in effect and amounts to indefinite detention in violation of the substantive guarantees of the Fifth Amendment."  (Doc. 28 ¶ 87). Relying on the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Petitioner contends that, in the context of civil immigration detention, "the Supreme Court has recognized only two legitimate, non-punitive government objectives: 'preventing danger to the community and preventing flight'" and "[d]etention is constitutionally permissible only so long as it 'bears a reasonable relation' to those purposes."  (Doc. 28 ¶ 80).  The Petitioner asserts that his re-detention "serves neither purpose."  (Doc. 28 ¶ 80).

The Eleventh Circuit has held that "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months

16

but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). In his supplemental brief filed on March 20, 2026, the Petitioner asserts that he has been detained for longer than the presumptively reasonable six-month period (which the Petitioner asserts began when his removal order became administratively final in April 2000) and states that his "cumulative detention time spans two years, plus approximately one month in 2024, plus another three months of constructive custody, and now an additional month and counting from February 2026 to now. Thus, his cumulative detention time is approximately three years and five months." (Doc. 45 at 2). However, there has been no documentation provided to the court that the Petitioner has been detained for this alleged amount of time; the only documentation before the court in relation to the Petitioner's detention indicates that the Petitioner has been detained since February 24, 2026. (*See* Doc. 29-3, Assumption of Custody Notification). Prior to this detention, the Petitioner contends that he was detained between December 16, 2025, and his check-in appointment on February 24, 2026, due to his "constructive custody" while participating in the Intensive Supervision Appearance Program ("ISAP"). (Doc. 45 at 2). However, this court previously found that the Petitioner's "OSUP was merely amended by the imposition of an ankle monitor and mandatory participation in the ISAP program" (doc. 26 at 8), and, as such, implicitly found that

17

the Petitioner was not detained for purposes of revoking his OSUP due to the imposition of the ankle monitor.

Nevertheless, assuming that the Petitioner is correct in his assertion that his cumulative detention time is approximately three years and five months, "if the court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns.  And adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals."  *Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025).  Further, a court in this circuit has stated that it "does not read *Zadvydas* to be a permanent 'Get Out of Jail Free Card' that may be redeemed at any time just because an alien was detained too long in the past."  *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018).  This court agrees.  Thus, the court finds that the Petitioner's substantive due process claim is not ripe.

Accordingly, Count One fails as a matter of law, and the court **DENIES** Count One's request for habeas relief.

## V.   Counts Three and Four: Violation of the Administrative Procedure Act (Arbitrary, Capricious, and Not in Accordance with Law)

The Petitioner argues that "[b]ecause the [Petitioner's] revocation was arbitrary, capricious, and contrary to law, it must be set aside."  (Doc. 28 ¶ 114).  The Petitioner contends that the "boilerplate justifications on the revocation form

are not a reasoned explanation" and "[u]nder the APA, an agency must provide a reasoned explanation that reflects a rational connection between the facts found and the decision made; conclusory statements are insufficient." (Doc. 28 ¶ 98). Further, the Petitioner argues that an "unexplained, pre-printed assertion that referral [to the Executive Associate Director of ERO] is 'not permitted' … is arbitrary and inconsistent with the APA's requirement that agencies heed their own detailed regulations governing post-order custody and revocation." (Doc. 28 ¶ 98). However, the requirement that ICE provide a reasoned explanation for its decision to revoke the Petitioner's OSUP and explain why referral to the Executive Associate Director of ERO are not requirements under the regulation used by ICE to revoke the Petitioner's OSUP.

Section 241.4(l)(2) is discretionary and states that an alien's release may be revoked when "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." Unlike the Petitioner's assertion, Section 241.4(l)(2) is devoid of any requirement that the revoking official give a reasoned explanation as to why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner. Further, even if the court were to find that notice and an informal interview were required under Section 241.4(l)(2), courts have held that the notice requirement only requires ICE to notify the alien of the reasons for the revocation and "does not

19

demand that the agency pen a comprehensive judicial opinion detailing the evidentiary basis for that conclusion." *Lageyre-Ravelo v. Lyons*, No. 2:25-cv-1171-KCD-DNF, 2026 WL 575183, at *4 (M.D. Fla. Mar. 2, 2026); *Tanha v. Warden, Baltimore Det. Facility*, No. 1:25-cv-02121-JRR, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) (stating that Section 241.4(l)(2) "does not compel the Government to demonstrate what facts or factors, if any, it based its decision to revoke under subsections (i), (iii), or (iv)"). "Because the ultimate decision rests firmly in the Government's hands, the procedural requirement to provide 'reasons' under § 241.4(l) is simply a notice requirement—not a demand for a full-blown evidentiary ruling." *Lageyre-Ravelo*, 2026 WL 575183, at *5.

Accordingly, Counts Three and Four fail as a matter of law, and the court **DENIES** Counts Three and Four's request for habeas relief.

## VI.    Count Seven: Ultra Vires Action / Lack of Delegated Authority

The Petitioner asserts that "[b]ecause the [Petitioner's] revocation was ordered by an official without the authority to do so, the action is ultra vires, void ab initio, and his resulting detention is unlawful." (Doc. 28 ¶ 134). Further, for the official's action to be valid, the Petitioner contends that the "Respondents must produce a written order explicitly delegating the power to revoke an OSUP to him." (Doc. 28 ¶ 134). The Respondents have done exactly what the Petitioner has asked and produced Delegation Number: 0001 from the Assistant Secretary of the Bureau

20

of Immigration and Customs Enforcement signed on June 6, 2003. (*See* Doc. 44-2).

Explicit in this delegation order is the delegation of authority to field office directors

under Section 241 relating to detention and removal of aliens. Thus, the court finds

that Field Office Director Bullock had the proper authority to revoke the Petitioner's

OSUP.

Accordingly, Count Seven fails as a matter of law, and the court **DENIES**

Count Seven's request for habeas relief.

## VII. Count Eight: Due Process Constraints on Third-Country Removal

The Petitioner "seeks a declaration that any attempt to remove him to a third

county must comply with 8 U.S.C. § 1231(b)(3) and the [Convention Against

Torture] regulations, and an order enjoining Respondents from executing any third-

country removal absent full compliance with those statutory, regulatory, and

constitutional requirements." (Doc. 28 ¶ 140). However, the Petitioner has not

shown that the Respondents are seeking to remove him to a third-country while

failing to comply with statutory, regulatory, and constitutional requirements. As

such, the court declines to address this argument.

Accordingly, Count Eight fails as a matter of law, and the court **DENIES**

Count Eight's request for habeas relief.

21

## CONCLUSION

For the reasons stated herein, the court finds that the Petitioner has failed to demonstrate that he is entitled to habeas relief under 28 U.S.C. § 2241.

Accordingly, upon consideration, the court hereby **DENIES** the Petitioner's amended habeas petition (doc. 28) on the merits; and **DENIES AS MOOT** the Petitioner's motion for a preliminary injunction (doc. 29).

All pending motions are hereby **DENIED AS MOOT**.

The court will enter a separate final judgment.

**DONE** and **ORDERED** on this the 1st day of April, 2026.

**BILL LEWIS**
UNITED STATES DISTRICT JUDGE

22